

**MICHAEL VANUNU**
PARTNER
(516) 357-3337
michael.vanunu@rivkin.com

WWW.RIVKINRADLER.COM

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000 F 516.357.3333

April 30, 2025

**By ECF**
Honorable Joseph A. Marutollo
United States Magistrate-Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    **Government Employees Insurance Company et al v. Stoyanovsky et al**
       **Docket No.: 1:24-cv-01017-PKC-JAM**

Dear Magistrate Judge Marutollo:

As the Court is aware, we represent Plaintiffs (collectively "GEICO" or "Plaintiffs") in the above-captioned action. Pursuant to Local Civil Rule 37.1 as well as Section 5.B of Your Honor's Individual Practices and Rules, Plaintiffs respectfully request an Order compelling: (i) Defendants Dilsod "Dilan" Islamov ("Islamov"), Kianan Tariverdiev ("K. Tariverdiev"), Nazim Tariverdiev ("N. Tariverdiev")(collectively, the "Indicted Defendants") to respond to Plaintiffs' First Set of Interrogatories (the "Interrogatories") by identifying their respective bank accounts; (ii) Indicted Defendants and Defendant Dmitriy Khavko ("Khavko") to respond to Plaintiffs' First Set of Document Requests (the "Requests")(together with Interrogatories, the "Discovery Requests") by providing copies of their 2021 and 2022 tax returns or alternatively identifying any accountant(s) they used to prepare their tax returns and authorize such accountant(s) to release copies of same; and (iii) non-party Plutus Global Inc. ("Plutus Global") to respond to a document subpoena Plaintiffs' served on it (the "Subpoena") requesting production of its 2021 and 2022 federal and state income tax returns, quarterly payroll tax returns, and corresponding documents.

## I.    History of the Disputed Discovery Requests and Subpoena

Plaintiffs' Discovery Requests to Indicted Defendants and Khavko included requests for: (i) "[f]ederal and New York State personal income tax returns prepared or filed by You, including all attachments and schedules, for fiscal years 2021 and 2022"; and (ii) the "identif[ication] [of] all payments of money You received from any individual and/or entity in relation to or on account of HMPC and for each such payment, identify…[iv] all accounts into which You deposited or transferred the payment that You received, including the financial institution and account number."

In response, Indicted Defendants invoked their Fifth Amendment privilege against self-incrimination. In Khavko's responses, he objected to producing tax returns on the basis they are

"confidential, proprietary, and irrelevant as personal tax returns are protected by quasi-privilege." With respect to the payment and bank account Interrogatory referenced above, Khavko indicated he would provide documents reflecting payments he received related to HMPC under separate cover; however, no such documents have been produced to-date. See Exhibit "1", which is an excerpted copy of the Indicted Defendants and Khavko's responses to the Discovery Requests.

Plaintiffs aver that the Defendants objections are improper and remain committed to the position that they are entitled to the above-identified information sought through the Discovery Requests. As such, Plaintiffs reached out to counsel for Indicted Defendants and Khavko via email outlining the deficiencies in their responses and reiterating Plaintiffs' request for tax returns. Plaintiffs followed up on their request on February 7, 2025 but did not receive a response to Plaintiffs' continued request for tax returns.

Plaintiffs served Plutus Global with the Subpoena, which requested "[a]ll federal and state income tax returns and quarterly payroll tax returns (IRS Form 941 and NYS Form 45-N) and any and all related documents filed on Your behalf" from 2021 through 2022. Plutus Global objected to the Subpoena on the basis such documents are "quasi-privileged", not relevant, and Plaintiffs have not attempted to obtain "such information through less intrusive discovery devices, such as the use of depositions." See Exhibit "2", which is a copy of Plutus Global's response to the Subpoena. Plaintiffs and counsel for Plutus Global discussed Plutus Global's objections to the Subpoena but were unable to reach a resolution.

Given that Plaintiffs and counsel for the Indicted Defendants, Khavko, and Plutus Global were unable to resolve these discovery issues, the Court's intervention is necessary.

## II.    GEICO's Position That Discovery Sought is Relevant and Not-Privileged

As discussed in the Amended Complaint, this case involves a massive No-Fault insurance fraud scheme committed by Indicted Defendants, Khavko, and others in which they misappropriated the name, medical license, signature, and other information of Bo Tyler Headlam, M.D. ("Headlam") and a medical professional corporation, Headlam Medical Professional Corporation ("HMPC") to bill GEICO and other New York automobile insurers for more than $1.1 million in fraudulent medical services during a six (6) week period. See D.E. 37.

In order for the scheme to succeed, the Indicted Defendants and Khavko (collectively, with Defendant Gary Grody, the "Management Defendants") arranged to have the fraudulent scheme funded primarily by Financial Vision Capital Group II LLC ("Financial Vision"), which allowed the Management Defendants to pay unlawful kickback payments to health care clinics (the "Clinics") in exchange for patient referrals to HMPC. Once Management Defendants had access to a Clinic's patients, Management Defendants were able to submit billing for services purportedly provided by Headlam through HMPC to GEICO for reimbursement, when such services never occurred. The resulting payments GEICO made to HMPC were then used by Management Defendants to pay themselves and others involved in the scheme. Such payments to themselves were almost always in the form of cash payments.

2

In addition to Financial Vision, Plutus Global, which is owned by Khavko, also purported to fund bills submitted to GEICO through HMPC. Despite providing Plaintiffs with what appears to be a "Demand Revolving Line of Credit Agreement" between Plutus Global and HMPC, there is no evidence Plutus Global is a bona fide funding company. Furthermore, there is no record of Plutus Global funding payments into HMPC's bank account, which raises questions about where such payments went.

In light of the Management Defendants' attempts to conceal their involvement in the scheme and financial profits, the requested tax returns and bank account information is clearly relevant to show how much each of the Indicted Defendants profited from the fraudulent scheme as well as show what representations were made in their tax returns with respect to those profits. Similarly, tax returns for Plutus Global will provide information about the extent to which it actually provided funding payments for HMPC, what, if anything, it received in return, and whether it was simply a tool used by Khavko to further conceal his involvement in the scheme.

## A.    The Discovery Sought is Not Protected by the Fifth Amendment Privilege

The Indicted Defendants should be compelled to respond the disputed Discovery Requests because their invocation of their Fifth Amendment privilege and the Fifth Amendment's the act-of-production doctrine in response to the Discovery Requests were not proper for these specific requests. "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cnty., 542 U.S. 177, 189 (2004) (citation omitted). This privilege "applies to any compelled incriminating communications . . . that are testimonial in character." In re Grand Jury Proceeding, 971 F.3d 40, 55 (2d Cir. 2020) (internal citation omitted). As such, this privilege does not extend to non-incriminating communication or testimony. In addition, the Fifth Amendment privilege does not extend to business records as they are created voluntarily and without compulsion. See United States v. Doe, 465 U.S. 605, 608-09 (1984). GEICO's requests for tax records (or in the alternative accountant information) and bank account information do not fall within the Fifth Amendment or act-of-production privilege because they are non-incriminating requests and seek documents that were previously voluntarily created.[1]

Previously, in Ashkenazi as Trustee of Halpert Alexander Trust v. Lincoln National Life Insurance Co., Magistrate Judge Cheryl Pollak ruled that an insurance company's discovery requests for a plaintiff's individual tax returns as well as financial statements and documents were exempt from the plaintiff's Fifth Amendment privilege act-of-production doctrine. 2010 WL 11623469 (E.D.N.Y. Aug. 27, 2010). In doing so, Judge Pollack held that personal tax returns are not protected by the Fifth Amendment because they fall under the required documents exception to the act-of-production doctrine. Id. at *6 (citing United States v. Cianciulli, 2002 WL 1484396, at *3 (S.D.N.Y. 2002); AAOT Foreign Economic Association (VO) Technosroyexport v. Int'l Development and Trade Services, Inc., 1999 WL 970402, at *7 (S.D.N.Y. Oct. 25, 1999)). Judge Pollak's reasoning in Ashkenazi is equally applicable here. Specifically, Judge Pollak explained that "financial documents . . . in a third party's possession are not subject to the Fifth Amendment privilege and their production may be compelled by a non-party subpoena. . . . Thus if [the

---

[1] GEICO is not seeking for the Indicted Defendants to restate, repeat, or affirm the truth of documents sought. See In re Proceedings before Aug. 6, 1984 Grand Jury, 767 F.2d 39, 41 (2d Cir. 1985).

insurance company] serves a subpoena on [plaintiff's] accountant, the accountant would be compelled to produce any financial statements and documents…even if the production of said document incriminates [the plaintiff]." Id. at *7.  Thereafter, the Court directed Ms. Halpert to authorize the production of the financial documents "as long as the authorization does not require Ms. Halpert to admit the existence, possession, or authenticity of the documents sought". The Court held such conduct proper because the Fifth Amendment privilege was not implicated by authorizing a third-party to provide the records. Id.

For the same reasons here, the Indicted Defendants' tax returns and bank account information are not protected by a Fifth Amendment privilege. As a result, Plaintiffs request that the Court compel indicted Defendants to: (i) provide copies of their 2021 and 2022 tax returns, or alternatively identify any accountants(s) they used to prepare same and authorize such accountant(s) to release copies of their tax returns to Plaintiffs; and (ii) identify their respective bank accounts so Plaintiffs can issue non-party document subpoenas to their banks for records related to same.

**B.      Discovery Sought is Not Protected as Quasi-Privileged**

Khavko and Plutus Global both object to Plaintiffs' requests for their tax returns on the basis tax returns are considered "quasi-privileged" under Hazeldine v. Beverage Media, Ltd., 1997 WL 362229, which explained that "while tax returns are not privileged, a court should compel disclosure only if, on balance, the federal policy of liberal discovery outweighs the policy of maintaining the confidentiality of tax returns." Hazeldine, 1997 WL 362229, at *4 (citing Tillman v. Lincoln Warehouse Corp., 1987 WL 7933, * 1 (S.D.N.Y.1987); SEC v. Cymaticolor Corp., 106 F.R.D. 545, 547 (S.D.N.Y.1985). In making such a determination, the court outlined a two-prong test: (i) "first, the court must find that the returns are relevant to the subject matter of the action;" and (ii) second, "there is a compelling need for the returns because the information contained therein is not otherwise readily available." Id.

Here, as discussed above, the information contained in the tax returns is highly relevant to this action. With respect to the second prong of the analysis, the information contained in Khavko's and Plutus Global's tax returns are not readily available. In fact, Plaintiffs would not be able to otherwise obtain such information from third parties without serving subpoenas on every known accountant in the Tri-State area, which in turn would allow Khavko and Plutus Global to conceal the extent of their ill-gotten financial gains at GEICO and other automobile insurers' expense.

In attempting to maintain the confidentiality of tax returns as indicated by Hazeldine, Plaintiffs will agree that all tax returns provided by Khavko and Plutus Global are to be treated as Confidential under the terms of this the Confidentiality Order issued in this matter. See D.E. 64 (granting Proposed Confidentiality Order at D.E. 63). As such, this Court – similar to highly analogous fraud cases in this District – should direct the disclosure of both Khavko and Plutus Global's tax returns. See, e.g, Gov't Emps. Ins. Co. v. Lenex Servs., Inc. et al., 2018 U.S. Dist. LEXIS 43584, at *27-32 (E.D.N.Y. 2018); State Farm v. McGee, 2012 WL 8281725 (E.D.N.Y. Feb. 21, 2012); State Farm v. CPT Medical Services, P.C., 375 F.Supp.2d 141, 155-56 (E.D.N.Y. 2005)(finding "financial records, including tax returns of the defendants relating to transactions which generated cash" to be discoverable to demonstrate the extent to which defendants profited from alleged fraudulent no fault billing scheme); see also State Farm Co. v. Fayda, 2015 WL

7871037, at \*5 (S.D.N.Y. Dec. 3, 2015), aff'd, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016) (compelling defendant in PIP fraud and racketeering case to disclose bank records and tax returns because disclosures were relevant to prove defendant profited from the scheme and, by extension, defendant's motive).

### III.      Defendants' Response

#### A.      Defendants Properly Invoked Their Fifth Amendment Rights

Plaintiffs contend that (1) Defendants should be compelled to produce copies of their 2021 and 2022 tax returns (or, alternatively, identify any accountant(s) who prepared the returns and authorize them to release the documents to Plaintiffs), and (2) Indicted Defendants[2] should be compelled to disclose the existence of any bank accounts currently unknown to Plaintiffs. Plaintiffs argue that Defendants' invocation of the Fifth Amendment privilege and the act-of-production doctrine was improper. Specifically, Plaintiffs assert that the requested documents (Defendants' tax records and Indicted Defendants' bank account information) (collectively the "Requested Documents) are not protected by the Fifth Amendment because they are non-incriminating and were created voluntarily.

Plaintiffs' argument is fundamentally flawed. Plaintiffs cannot know the contents of the requested documents or the testimonial inferences that the act of producing them would necessarily convey. As a result, the documents cannot simply be presumed to be harmless. The Fifth Amendment privilege applies precisely because the act of production itself may reveal incriminating information—including the existence, possession, authenticity, and contents of the Requested Documents—matters of which Plaintiffs admittedly have no independent knowledge. Plaintiffs' attempt to characterize the documents as "non-incriminating" prematurely assumes what only the compelled production could confirm, in direct conflict with well-established Fifth Amendment principles.

Moreover, Plaintiffs' assertion that the documents were "created voluntarily" conflates two distinct concepts: the voluntary creation of documents and the compelled disclosure of documents. The Fifth Amendment protects against the compelled production of potentially self-incriminating evidence, regardless of whether the documents were created voluntarily or in the ordinary course of business. Even documents created without compulsion are protected when the act of producing them would itself communicate testimonial information that could expose the individual to criminal liability.

##### i.      *The Act of Production Would Itself Be Testimonial and Incriminating*

The Requested Documents are not mere business records routinely maintained in a corporate capacity. They are highly personal and confidential materials, the compelled production of which would require Defendants to implicitly confirm their existence, possession, and authenticity—each a testimonial act protected by the Fifth Amendment. *See In re Grand Jury Proceeding*, 971 F.3d

---

[2] The term "Indicted Defendants" follows Plaintiff's collective reference to Defendants Dilsod "Dilan" Islamov, Kianan Tariverdiev, and Nazim Tariverdiev.

40, 55 (2d Cir. 2020) (recognizing that the act of producing documents is itself testimonial when it compels the individual to acknowledge existence, possession, or authenticity).

Plaintiffs' reliance on the Second Circuit's decision in *In re Grand Jury Proceedings*, 971 F.3d 40 (2d Cir. 2020), is misplaced and, in fact, supports Defendants' position. In that case, the Second Circuit reaffirmed the longstanding "collective entity" doctrine, which holds that an individual cannot assert the Fifth Amendment privilege, including the act-of-production privilege, on behalf of a "collective entity"—namely, "any organization which is recognized as an independent entity apart from its individual members," such as a corporation or partnership. *Id*. at 56 (internal citations omitted). Under that doctrine, courts must distinguish between documents that are corporate in nature, which fall outside the scope of Fifth Amendment protection, and documents that are personal in nature, which remain fully protected. *See id*. ("when a witness refuses to produce documents on Fifth Amendment grounds, the court must distinguish between those documents that are personal in nature, and therefore may be withheld, and those that are corporate in nature, and therefore fall within the 'collective entity' exception").

Here, it is undisputed that the Requested Documents are personal, not corporate, and therefore fall squarely within the Fifth Amendment's protections. Compelling Defendants to produce these documents would infringe upon their constitutional rights. As such, Defendants respectfully request that the Court deny Plaintiffs' motion to compel production of their individual tax returns.

Moreover, Plaintiffs' demand that Defendants disclose the identity of the accountant(s) who prepared their tax returns is misplaced and improperly relies on this Court's ruling in *Ashkenazi as Trustee of the Halpert Alexander Trust v. Lincoln National Life Insurance Co.*, 2010 WL 11623469 (E.D.N.Y. Aug. 27, 2010). In *Ashkenazi*, the identity of the accountant was already known to the parties and was not in dispute. In contrast, Plaintiffs here seek to compel Defendants to affirmatively identify their accountants, which imposes a new and improper discovery obligation that was not at issue in *Ashkenazi*. Plaintiffs' reliance on *Ashkenazi* is thus inapposite, as it does not support the proposition that a party must identify its tax preparers where their identities have not already been established. Accordingly, Defendants respectfully request that the Court deny Plaintiffs' motion to compel Defendants to identify the accountant(s) used to prepare their 2021 and 2022 individual tax returns and authorize such accountant(s) to release copies of same to Plaintiffs.

### ii.      *Plaintiffs' Request for Identification of Bank Accounts Is Overbroad, Speculative, and Constitutionally Impermissible*

Notwithstanding the reasons outlined above, Plaintiffs' request for the Indicted Defendants to "identify all bank accounts that were used in relation to the billing, operating, and/or management of HMPC…even accounts that were not in the name of Headlam or HMPC" constitutes an impermissible fishing expedition that compels testimonial admissions, violating their Fifth Amendment rights, and thus must be denied.

The act-of-production privilege applies when "the existence and location of" the requested documents are unknown to the plaintiff. *See SEC v. Forster*, 147 F. Supp. 3d 223, 227 (S.D.N.Y. 2015) (quoting *In re Grand Jury Subpoena Duces Tecum Dated October 29, 1992*, 1 F.3d 87, 93

(2d Cir. 1993)). Here, Plaintiffs do not seek production of specific, identified records whose existence and ownership are known. Rather, they seek to compel Indicted Defendants to reveal *whether such accounts exist at all*. Requiring Indicted Defendants to identify previously unknown or alleged "hidden" accounts would necessarily require them to admit the existence and control of such accounts, thereby forcing testimonial disclosures that could be incriminating.

Plaintiffs' request is not narrowly tailored to known assets or specific financial institutions but is based on broad, speculative allegations regarding the supposed concealment of funds. Courts have consistently held that discovery requests based on mere speculation are improper fishing expeditions, particularly where constitutional rights are implicated. *See United States v. Hubbell*, 530 U.S. 27 (2000); *see Forster*, 147 F. Supp. 3d at 230.

Permitting such open-ended discovery would improperly shift the burden onto Indicted Defendants to assist Plaintiffs in uncovering unknown financial information to be used against them— precisely what the Fifth Amendment was designed to prevent. Accordingly, Indicted Defendants respectfully request that the Court deny Plaintiffs' motion to compel the identification of bank accounts.

### IV.    Plutus Global's Response

Non-party Plutus Global Inc. ("Plutus Global") respectfully opposes Plaintiffs' motion to compel, seeking enforcement of a document subpoena served upon Plutus Global requesting production of its 2021 and 2022 federal and state income tax returns, quarterly payroll tax returns, and corresponding documents (collectively the "Subpoenaed Documents").

Plaintiffs' motion to compel non-party Plutus Global to produce the Subpoenaed Documents must be denied because Plaintiffs fail to meet the heightened standard applicable to the disclosure of tax returns under federal law. As recognized in *Hazeldine v. Beverage Media, Ltd.*, 1997 WL 362229 (S.D.N.Y. June 26, 1997), although tax returns are not absolutely privileged, courts are reluctant to order their disclosure and require a two-prong showing: (1) that the returns are relevant to the subject matter of the action, and (2) that there is a compelling need for the returns because the information is not otherwise readily available. *Id*. at *4.

While Plaintiffs broadly assert that the information in Plutus Global's tax returns is relevant, Plaintiffs have not shown that the information cannot be obtained through less intrusive means. *See Hazeldine*, 1997 WL 362229, at *11; *see also Open Hous. Ctr. v. Kings Highway Realty*, CV-93-0766(JBW), 1993 U.S. Dist. LEXIS 15927, at *17 (E.D.N.Y. Nov. 8, 1993) (noting general rule that the need to discover tax returns is not compelling where financial information can be obtained through deposition or other documents within reach of the party seeking disclosure). Critically, Plaintiffs have not even attempted to obtain the financial information they seek through more targeted discovery devices, such as serving subpoenas on known banks, accountants, or other financial institutions associated with Plutus Global. The law is clear that tax returns should not be compelled where the information could be obtained through alternative sources. *See Hazeldine*, 1997 WL 362229, at *4.

Moreover, the fact that Plutus Global is a non-party weighs heavily against compelling production. Courts routinely afford greater protection to non-parties in discovery disputes to avoid imposing undue burden. *See In re: Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-md-2023 (BMC), 2012 U.S. Dist. LEXIS 143955, at *14 (E.D.N.Y. Oct. 2, 2012). Tax returns, given their highly sensitive nature, are particularly subject to this heightened scrutiny.

Plaintiffs' reliance on cases compelling the production of tax returns in fraud cases involving parties to the litigation[3] is misplaced; all of these cases involved *party defendants* accused of committing fraud. Here, Plutus Global is not a party, and Plaintiffs' generalized allegations of fraud are insufficient to overcome the strong policy against unnecessary disclosure of confidential tax information by non-parties.

In short, Plaintiffs have not satisfied either prong of the *Hazeldine* test: they have not demonstrated a compelling need for Plutus Global's tax returns, nor have they shown that the information cannot be obtained through other, less intrusive means. Accordingly, the Court should deny Plaintiffs' motion to compel non-party Plutus Global to produce the Subpoenaed Documents.

We thank the Court for its time and continued attention to this matter.

Very truly yours,

RIVKIN RADLER LLP

/s/ *Michael Vanunu*
Michael Vanunu, Esq.

SCHWARTZ, CONROY & HACK, P.C.

*/s/ Matthew J. Conroy*
Matthew J. Conroy, Esq.
*Attorney for Defendants Khavko, Islamov,*
*K. Tariverdiev, and N. Tariverdiev and*
*Attorney for Non-Party Plutus Global*

---

[3] *Gov't Emps. Ins. Co. v. Lenex Servs., Inc. et al.*, 2018 U.S. Dist. LEXIS 43584, at *27-32 (E.D.N.Y. 2018); *State Farm v. McGee*, 2012 WL 8281725 (E.D.N.Y. Feb. 21, 2012); *State Farm v. CPT Medical Services, P.C.*, 375 F.Supp.2d 141, 155-56 (E.D.N.Y. 2005); and *State Farm Co. v. Fayda*, 2015 WL 7871037, at *5 (S.D.N.Y. Dec. 3, 2015), aff'd, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016).