```
1                 UNITED STATES DISTRICT COURT

2                 EASTERN DISTRICT OF NEW YORK

3    GOVERNMENT EMPLOYEES           .     Docket No.
                                    .     1:24-CV-01017-PKC-JAM
4    INSURANCE COMPANY ET AL,       .
                                    .     Brooklyn, New York
5         Plaintiffs,               .     Tuesday, May 13, 2025
                                    .     11:32 a.m.
6              v.                    .
                                    .
7    STOYANOVSKY ET AL,             .
                                    .
8         Defendants.               .
                                    .
9    . . . . . . . . . . .  .   .
```

TRANSCRIPT OF DISCOVERY CONFERENCE
BEFORE THE HONORABLE JOSEPH A. MARUTOLLO
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

```
For the Plaintiffs:        Rivkin Radler
                           ALEXANDRA WOLFF, ESQ.
                           MICHAEL VANUNU, ESQ.
                           926 RXR Plaza
                           West Tower
                           Uniondale, New York  11556
                           516-357-3000

For the Defendant,         Peter Birzon & Associates, P.C.
Vladislav Stoyanovsky.:    PETER M. BIRZON, ESQ.
                           400 Jericho Turnpike
                           Suite 100
                           Jericho, New York  11753
                           516-942-0596

For the Defendant,         Kravet & Vogel, P.C.
Headlam Medical            DONALD J. KRAVET, ESQ.
Professional Corp:         555 Fifth Ave
                           14th Floor
                           New York, New York  10017
                           646-248-5460

For the Defendants,        Schwartz, Conroy & Hack, PC
Nazim Tariverdiev,         ROBERT E.B. HEWITT, III, ESQ.
```

```
 1   Kianan Tariverdiev,        666 Old Country Road
     Dilsod Islamov, and        9th Floor
 2   Dmitriy Khavko:            Garden City, New York  11530
                                516-745-1122
 3

 4
     Transcription Service:     Superior Reporting Services LLC
 5                               P.O. Box 5032
                                 Maryville, TN 37802
 6                               865-344-3150

 7
     Proceedings recorded by electronic sound recording;
 8   transcript produced by transcription service.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                         P R O C E E D I N G S

2              THE COURT:  Civil cause for discovery conference,

3    case number 24-CV-01017, GEICO, et al. versus Stoyanovsky, et

4    al.  Could the parties please give their appearances for the

5    record starting with Plaintiff?

6              MR. VANUNU:  Good morning, Your Honor.  This is

7    Michael Vanunu for Plaintiffs, from Rivkin Radler.  I'm here

8    with my colleague Alexandra Wolf also from Rivkin Radler.

9              MR. HEWITT:  Robert Hewitt from Schwartz, Conroy,

10   and Hack, PC for the Defendants, Nazim Tariverdiev, Kianan

11   Tariverdiev, Dilsod Islamov, and Dmitriy Khavko.

12             MR. BIRZON:  Peter Birzon on behalf of Vlad

13   Stoyanovsky.

14             MR. KRAVET:  And Donald Kravet, Your Honor, with

15   Kravet and Vogel, LLP on behalf of Defendant Headlam Medical

16   Professional Corp.

17             THE COURT:  Okay.  Good morning, everyone.  This is

18   Judge Marutollo.  Let me hear first from Plaintiffs about

19   what are the current discovery disputes.  First, have there

20   been any changes since the filing has been made?  And then,

21   second, what are the current disputes?

22             MR. VANUNU:  Your Honor, this is Michael Vanunu.

23   I'm going to let my colleague, Alexandra Wolff, handle all

24   aspects relating to the discovery disputes.  I will be

25   talking later on about any aspects relating to the discovery

1    schedule.  If that's okay with the Court?

2                THE COURT:  Yes.  That's fine.

3                MS. WOLFF:  Good morning, Your Honor.  With respect

4    to the pending discovery dispute, nothing has changed as of

5    the date of the filing, in terms of what has been provided

6    and what is outstanding.  To give Your Honor kind of an

7    overview of the discovery that we requested of the Defendants

8    and their responses, in terms of the indicted Defendants they

9    basically asserted their Fifth Amendment privilege with

10   respect to every single discovery request, both in terms of

11   the interrogatories and in response to document requests.

12               So as Your Honor can see, we are only seeking a

13   limited scope of information from the Defendants or the

14   indicted Defendants, rather, that we believe are not covered

15   by the Fifth Amendment and the act of production doctrine.

16   Similarly, I should note, rather, that the Defendant --

17               THE COURT:  Let me interrupt just for a moment.  So

18   let me just kind of take these in turn, these issues.

19               MS. WOLFF:  Okay.

20               THE COURT:  The first issue, it appears to me, is

21   related to the bank account requests and the act of

22   production privilege.  Can I just ask the Defendants to

23   explain their position and why the request for all bank

24   accounts relating to the operation of the HMPC violates the

25   act of production privilege?

1          MR. HEWITT:  Yes, Your Honor.  To identify any bank

2   accounts, whether they exist or do not exist, what their

3   numbers are, is clearly testimonial in nature, fits squarely

4   into the act of production privilege.  It requires

5   identification of people or information not currently in the

6   Plaintiff's possession, which during testimony would be

7   subject to a Fifth Amendment privilege.  And as such, as part

8   of the act of production privilege, to identify it then would

9   essentially be, you know, testifying against themselves,

10  which the Fifth Amendment gives them a right not to do.

11          THE COURT:  Okay.

12          MR. HEWITT:  So in the case --

13          THE COURT:  Let me hear Plaintiff's --

14          MR. HEWITT:  I'm sorry.

15          THE COURT:  -- response again about this request to

16  compel the Defendants to identify their respective bank

17  accounts.

18          MS. WOLFF:  Well, Your Honor, I think our motion

19  makes clear that we also provided an alternative, which was

20  simply for the Defendant -- and we're talking only about the

21  indicted Defendants at this point, but for the indicted

22  Defendants to identify even just the banking institution

23  where they have these accounts.

24          I think the Court has made clear in similar

25  situations that records that are maintained by third parties

1  cannot invoke the Fifth Amendment act of productive

2  production privilege.  And unfortunately, since we're dealing

3  with individuals in this case as opposed to entities, we

4  don't have any checks or any other means to get these records

5  from alternative sources, unless we were to subpoena every

6  single banking institution that we know of, which would

7  clearly be overburdensome on the Plaintiffs.

8         So at this point, Your Honor, all Plaintiffs are

9  asking for is for them to identify a banking institution, and

10 it would be our position that that's non-testimonial and

11 non-incriminating.

12        THE COURT:  So why can't they -- why can't that

13 suffice?  Let me ask the indicted Defendants' counsel.

14        MR. HEWITT:  Well, I believe it's for the same

15 reason, to testify in the form of their interrogatories as to

16 any banking institution is to confirm that they have these

17 records, that these records are authentic, that they used

18 these banks.  And the fact that they're trying to narrow it

19 does not mean that it's still not testimonial, and it's still

20 something that would be subject in a deposition to taking the

21 Fifth Amendment.  That would be true of identifying any

22 banking institutions and accountants, anything like that.

23 The cases they cite -- in one case they cite, they already

24 had the accountant information and then the accountant was

25 just being asked to produce documents.  Here, they're asking

1    our clients to testify in this case.  And as you know, Your

2    Honor, you've already stayed discovery -- I mean depositions

3    as to the indicted Defendants, and this is just an end-run

4    around that by asking these questions in interrogatory form.

5            MS. WOLFF:  Well, Your Honor, if I may interrupt --

6            THE COURT:  And just to be clear, is anyone on the

7    line from the U.S. Attorney's Office?

8            MS. WOLFF:  No, Your Honor.  But I do just want to

9    clarify something.  It wasn't only that we asked these

10   Defendants to identify their banking institutions in the

11   interrogatories.  We also requested these documents as part

12   of document requests which were not required to be verified

13   by the Defendants.  And so we're not seeking them to testify

14   or otherwise validate these records, but only to identify a

15   banking institution so that we can seek these records through

16   a subpoena duces tecum to a third party.

17           MR. HEWITT:  That act of production is still

18   covered by the privilege because it's admitting that these

19   records exist, where they exist.  And in this case, these

20   Defendants are under indictment.  They're facing serious

21   criminal charges, and they have the right not to incriminate

22   themselves.

23           THE COURT:  All right.  I'm going to deny the

24   motion to compel the Defendants to identify their respective

25   bank accounts in response to the interrogatories and

1    discovery requests.  In my view, the Plaintiff's request for

2    all bank accounts used in relation to the billing, operating,

3    and/or management of HMPC, even accounts that were not in the

4    name of Headlam or HMPC, is prohibited by the act of

5    production privilege.

6          The Supreme Court has recognized that this

7    privilege has consistently been accorded a liberal

8    construction.  And in accordance to this principle, the Fifth

9    Amendment privilege has been found to extend not only to the

10   answers that are directly incriminatory, but also to those

11   that while not themselves inculpatory would furnish a link in

12   the chain of evidence needed to prosecute the claimants.  And

13   that's from Ohio versus Reiner, Supreme Court case from 2001.

14         The Second Circuit has recognized that the very act

15   of production can be incriminating, because it tacitly

16   concedes the existence of the papers demanded and their

17   relation to the allegations.  And that's from United States

18   versus Fridman, F-R-I-D-M-A-N, 974 F.3d 163 in the Second

19   Circuit in 2020.

20         Again, here, based on the party submissions, the

21   documents at issue are personal to the indicted Defendants,

22   as nothing suggests that that information sought concerns

23   anyone but the corresponding Defendant subject to the

24   subpoena.  Production of those documents, at minimum, might

25   furnish a link in the chain of evidence needed to prosecute

1  the claimant.  And as the Defendant's counsel just noted,

2  these are indicted Defendants.

3         I'm going to deny the request.  And that's the

4  first issue to discuss.

5         The next issue I wanted to talk about was related

6  to the motion to compel the Defendants to provide copies of

7  their 2021 and 2022 tax returns, or alternatively identify

8  accountants that they used to prepare their tax returns.  Why

9  isn't that permissible from the Defendant's perspective?

10         MR. HEWITT:  We're still talking about the indicted

11  Defendants --

12         THE COURT:  Hang on just a second.  Doesn't that

13  fall under the required records or documents exception?

14         MR. HEWITT:  Well, in terms of tax returns, as the

15  case law sets out, they're at least considered

16  quasi-privileged in that case.  And if there's an ability to

17  get the records -- the information sought in other ways, they

18  have to try that first.

19         I recognize the difficulty in this case because

20  they're not -- they're, you know, pleading the Fifth as to

21  interrogatories and documents.  But again, producing the tax

22  returns could be considered, one, an admission that they have

23  been filed, that they're accurate, that they've been sworn

24  to.

25         And the same thing as to identifying the

1    accountant -- is the same argument as before -- that this is,

2    you know -- this is identification and testimonial nature.

3    That's the accountant's name.

4         THE COURT:  Let me hear from the Plaintiffs in that

5    one.

6         MS. WOLFF:  Your Honor, with respect to the tax

7    returns, I think the Court has very clearly indicated that

8    tax returns fall outside of the scope of the Fifth Amendment

9    act of productive privilege because they constitute required

10   records.

11        And so in this case, despite what counsel is

12   saying, these absolutely fall outside of the scope.  And in

13   fact, the Court on numerous occasions has required production

14   of tax returns for individuals under similar circumstances.

15        So our position would be that these are not

16   properly covered by the Fifth Amendment, and they are

17   excluded because they are required records to be kept and

18   maintained, and that there is a public interest in

19   maintaining such records, and these records are of the nature

20   customarily kept by individuals who prepare them.

21        THE COURT:  All right.  I'm going to grant the

22   Plaintiff's motion here to compel the Defendants to provide

23   copies of their 2021 and 2022 tax returns or alternatively

24   identify any accountants they use to prepare their tax

25   returns, and authorize those accountants to release the same.

1          At this point, I agree again with the Plaintiffs

2   that under the law, documents or records which are required

3   to be kept pursuant to a reasonable regulatory scheme are

4   considered to have public aspects, and thus are exempt from a

5   claim of privilege under the Fifth Amendment.  And that's a

6   case Ashkenazi versus Lincoln National Life Insurance Company

7   from the Eastern District in 2010.

8          More specifically, a case from 2020, the Southern

9   District, US SEC versus Collector's Coffee Inc., said that

10  "Tax returns and related documents have repeatedly been held

11  to be required records and thus not subject to the Fifth

12  Amendment privilege."

13         Here, the documents are relevant to the subject

14  matter of this action.  They could tend to show how much the

15  indicted Defendants profited from the fraudulent scheme, and

16  there's a compelling need for the documents as they're

17  otherwise not readily available.

18         And the Plaintiffs also cites to the fact that

19  they'd have to seek the information from every accountant in

20  the Tri-State area, which is obviously unreasonable.  So I'm

21  going to grant the Plaintiff's motion.  And again, if the

22  Defendants are not actually in -- the tax records are not in

23  their possession, they're ordered to obtain a copy from their

24  tax preparers or from the IRS.

25         With respect to this third issue regarding the

1   motion to compel non-party Plutus Global to respond, to

2   produce its tax returns -- is Counsel for Plutus Global on

3   the line?

4           MR. HEWITT:  That's also me, Your Honor.

5           THE COURT:  Okay.  Go ahead.  What's your thoughts

6   here?

7           MR. HEWITT:  In this case, Plutus Global is not a

8   party to this matter.  Plutus Global should not have to

9   produce all of their tax returns just because Plaintiffs want

10  to go on a fishing expedition.  They're non-party.  They're

11  not subject to the same standards.  They have a

12  quasi-privilege as to their tax returns from the case law

13  that we cited in our letter, and they haven't shown that it

14  cannot be obtained through less intrusive means, such as

15  depositions or requesting other documents besides tax

16  returns.  There may be a lot of irrelevant information on the

17  tax returns, and I don't believe Plaintiff, therefore, is

18  entitled to them.  If they were ordered to be produced, it

19  should be very limited in what is produced and not the full

20  return.

21          THE COURT:  Let me just ask before I ask Plaintiff

22  to respond -- Defendant Khavko, based on my ruling a moment

23  ago, will be producing his tax returns, and he's the owner of

24  Plutus; is that right?

25          MR. HEWITT:  Yes.  Khavko is the owner of Plutus.

1    Your Honor, were you including Khavko in your prior ruling?

2    The only reason I ask -- he's not indicted.  He's not an

3    indicted Defendant, so I thought that was limited to indicted

4    Defendants.

5             THE COURT:  Well, let me ask the Plaintiff just for

6    clarification on the tax return issue, the second issue that

7    you raised.  Is that request only for the indicted

8    Defendants?

9             MS. WOLFF:  No, Your Honor.  We also requested it

10   of Defendant Khavko who, similarly to Plutus Global, objected

11   on the grounds of quasi-privilege.

12            THE COURT:  Well, again I think Defendant Khavko

13   should be included in my prior order.  I don't see a reason

14   to not include him.  But I also think frankly -- and I'll

15   hear from Plaintiffs -- but I'm inclined to deny the motion

16   to compel.  If Khavko is going to be producing these tax

17   returns, it would appear that Plaintiffs could potentially

18   obtain the information through less intrusive means, such as

19   through a deposition of Mr. Khavko, and there'd be no need to

20   you know subpoena a non-party particularly at this stage.

21            MS. WOLFF:  Well, Your Honor, as we indicated

22   before and as we indicated in our filing, Plutus Global is,

23   as Your Honor said, owned by Defendant Khavko.  However, with

24   respect to this case, Plutus Global purported to provide

25   funding on behalf of Headlam Medical Professional

1    Corporation.  And in Mr. Khavko's discovery responses, he

2    repeatedly indicated that they provided extensive funding

3    services for Headlam Medical Professional Corporation

4    pursuant to a funding agreement that they provided.  However,

5    in our review of the records obtained to date, there has been

6    zero evidence of any payments received by Headlam Medical

7    Professional Corporation for funding provided by Plutus

8    Global.

9              So respectfully, Your Honor, at this point, I think

10    any discrepancies in what Plutus Global is putting in their

11    tax returns or in their financial records, compared to the

12    other bank records we have today, are clearly relevant to the

13    matter at hand and could be used during a deposition of

14    Plutus Global or Defendant Khavko.

15              THE COURT:  Any response from Defendant?

16              MR. HEWITT:  I mean, my response is at this point,

17    they have not even taken the deposition of Khavko who is

18    himself an individual Defendant here.  They chose not to sue

19    Plutus Global in this action.  And at this point, the case

20    law seems clear that they have to try other methods before

21    they get the tax returns.  And I know that Your Honor has

22    already ruled on Khavko, but I would say that is the same

23    thing to Khavko's tax returns as well.  That they should have

24    taken his deposition first and then if there was needed

25    further information, possibly tax returns or part of the tax

1   returns, should have been requested then.  You know, I note

2   that one of the cases they cite, GEICO versus Lenox, all that

3   the court required was the total income and any income from

4   medical businesses and medical entities.

5         So in this case, I think both the Khavko and

6   Plutus -- the Khavko deposition should take place first, and

7   that if there were certain documents they wanted from

8   Plutus -- all they requested was the tax returns.  They

9   didn't request any checks or anything directly from Plutus.

10  Mr. Khavko has responded, but I'm saying Plutus itself as an

11  entity.  They did not specifically request anything from

12  Plutus in their subpoena.  Other than --

13        MS. WOLFF:  Your Honor, if I can respond briefly.

14        THE COURT:  Yeah.  Go ahead.

15        MS. WOLFF:  As an initial matter, Your Honor,

16  Khavko's responses indicated he would be providing financial

17  documents, including financial documents related to Plutus

18  Global.  And to date we have not received any such documents

19  or bank records, despite their indication that they would be

20  providing them under separate cover.

21        In terms of counsel's suggestion that we take

22  Khavko or Plutus' deposition prior to obtaining these

23  documents -- Your Honor, as our amended complaint explained

24  at length, this scheme was only successful because of the

25  discrete nature in which the finances flowed.  Specifically,

1    this was a cash-based scheme.  So all of the money that was

2    coming in was converted into gold and then to cash.  And the

3    Defendants were dealing in cash transactions with one

4    another.  And absent having any kind of financial documents

5    or bank records or anything to confront these Defendants with

6    at a deposition, it seems it would be a waste of judicial

7    resources to take a deposition and then after the fact,

8    subpoena these tax returns to then confront them with later.

9            THE COURT:  Well, look, at this point I still -- I

10   think the case law indicates -- and I'll point to Jao (ph.)

11   v. Han 2024 Westlaw 332-8589, in which there was a denial

12   of -- this from Eastern District of New York, from July 8,

13   2024, where there's a denial of requests for tax returns, and

14   the information sought could be obtained through depositions.

15   As well as in re Novartis 2020 West Law 3317-203 from the

16   Southern District in 2020.

17           The Court has to be particularly sensitive to

18   weighing the probative value of the information sought

19   against the burden of production of the non-party.  Again,

20   information produced through Khavko's tax returns may reveal

21   individuals or entities that could be subject to more

22   targeted discovery to obtain the information.

23           So at this point I'm going to deny the motion to

24   compel the non-party, Plutus Global, to produce its 2021 and

25   2022 federal and state income tax returns, quarterly payroll

1    tax returns, and corresponding documents.  But I'm making

2    that denial without prejudice, particularly as there may be

3    an opportunity to renew that motion, depending on what

4    happens in discovery.

5           By the way, I'm also going to order that the tax

6    returns that are provided by Khavko should be treated as

7    confidential under the confidentiality order in this matter.

8    I think that may have been a dispute as well, but there's

9    really no reason that it should not be confidential.

10          Any other disputes that I haven't raised yet?

11          MR. HEWITT:  The only thing, Your Honor, I would

12   say is that -- I'm just going to renew, you know, my

13   objection to the decision on Khavko individually because I

14   believe his testimony could be taken first before his tax

15   returns are required, or a limited amount of tax returns

16   could be ordered.  But I understand Your Honor has ruled.

17          As to the matters that Plaintiff's counsel has said

18   that we responded that we would provide certain documents

19   under separate cover, I know they sent a couple of emails

20   about that.  We did not -- I don't believe -- have a

21   conversation about that, but we will provide those if we can

22   be given just maybe three weeks to do so.

23          THE COURT:  Well, before we talk about the

24   discovery schedule, anything else to discuss at this point?

25          MR. VANUNU:  Your Honor, this is Michael Vanunu

 1   from Plaintiffs.  I just have a quick clarification as to the

 2   Khavko tax returns.  And obviously just for the record to be

 3   clear, Plaintiffs did not object and are happy to consider

 4   all of the tax returns provided as confidential in this

 5   nature, understandably so, pursuant to the -- and there was

 6   never an issue between the parties.

 7          But are the tax returns that Khavko is supposed to

 8   provide to include all exhibits, all attachments, all

 9   supplements, even to the extent of the K-1s or however it's

10   filed, as it relates to Plutus Global?  Because obviously if

11   Plutus Global is a company, there would be some sort of

12   either distribution or some sort of information on that that

13   is attributed to Khavko's return.  So we just want to ask

14   that that portion obviously be included in the tax return

15   that is provided to Plaintiffs.

16          THE COURT:  Look, I think at this point I'm going

17   to allow the tax returns to be produced.  In terms of the

18   specifics of what is included, I'm inclined to rule in that

19   favor and say that it should include everything you just

20   described.  But frankly at this stage, I'm not sure if that's

21   been completely briefed.

22          If the Defendants want to raise an objection on

23   that and put in some papers, you're welcome to do so.  But at

24   this stage I'd be inclined to just produce everything,

25   particularly since I've already denied the request related to

1    Plutus Global, and it would seem that -- especially when

2    there's a party involved as the owner of Plutus

3    Global -- that that would be the less intrusive means, rather

4    than have Plutus Global produce all these other documents.

5           So it may open up a can of worms here, I think, if

6    the Defendant does object to this further, in the sense that

7    it might open the door to more from Plutus Global.  But at

8    this point I'm going to stand by what I ordered earlier and

9    if there needs to be additional briefing then so be it.

10          MR. VANUNU:  Thank you for the clarification.

11          THE COURT:  Let me turn to the discovery schedule.

12   I understand that the Plaintiffs had -- I believe the

13   Plaintiffs had sought an extension of the discovery deadline.

14   Is there an agreement between the parties on this?

15          MR. VANUNU:  From Plaintiffs' perspective, yes.  I

16   believe that the parties all agreed to that, but obviously

17   everyone's here.  Unless they want to voice another opinion.

18          MR. HEWITT:  Your Honor, to be -- sorry.

19          THE COURT:  Well, just to be clear, so everyone's

20   on the same page, this request would be from July 3rd to

21   September 12th, for fact discovery from October 1st to

22   December 15th for expert discovery.  And then the final date

23   of the first step, in dispositive motion for practice be

24   December 22nd; is that right?

25          MR. VANUNU:  That is the request from Plaintiffs,

 1   Your Honor.  Yes.

 2           THE COURT:  Okay.  Let me hear from the other

 3   parties.

 4           MR. HEWITT:  It's Robert Hewitt.  Again, we consent

 5   and we agree to that discovery schedule extension.

 6           MR. BIRZON:  And we consent as well, on behalf of

 7   Vlad Stoyanovsky.

 8           THE COURT:  All right.  Hang on just one second

 9   here.  Given what's been going on here in terms of the

10   discovery we've discussed, in terms of the efforts needed to

11   obtain some of these materials, which I realize could take a

12   little bit of time, particularly if it's from the IRS, I will

13   grant that extension.

14           However, I do want to be -- really emphasize -- and

15   I know I said this previously -- but we're at a point in this

16   litigation now where, you know, the close of discovery is in

17   sight.  I'm not inclined to move these further.  So I will

18   grant that extension, but I'm going to note in the minute

19   entry that I'm not inclined to extend these deadlines any

20   further, absent truly exceptional cause.

21           I'm going to order the parties to file a joint

22   status report by June 30th, and that should just give an

23   overview of where things stand.

24           Has there been any update with settlement

25   discussions here?

1          MR. VANUNU:  From Plaintiffs, Your Honor, no.  I

2     believe since the indictment came down, on the indicted

3     Defendants in the pending criminal prosecution, there hasn't

4     really been any communication on settlement.  We are happy

5     and willing to talk settlement, but I think that's kind of up

6     to the indicted Defendant's current pending criminal status.

7          And, you know, as Your Honor indicated that he's

8     not -- your preference not to extend the fact discovery

9     schedule -- we obviously don't know what the government will

10    want to do in 90 days when the stay of the certain

11    depositions are expired.  But to the extent that the

12    government seeks to extend the stay of certain depositions

13    again and the Court grants that request, we'll have -- I

14    don't know how the parties are able to finish discovery

15    without those depositions not being stayed.  Meaning that we

16    still need to do those depositions.

17         THE COURT:  Understood.  But I think everything

18    else should be presumed to be completed.  So in other words,

19    there may be a carve-out of sorts, but let's see where things

20    are, and given what was said in the Southern District, it may

21    be a moot point.

22         MR. VANUNU:  Yes, Your Honor.

23         THE COURT:  You know, that may be resolved sooner

24    rather than later anyway.

25         Okay.  Anything further at this point?

1          MR. VANUNU:  Nothing from Plaintiffs, Your Honor.

2          MR. BIRZON:  Nothing from Stoyanovsky, Your Honor.

3          MR. HEWITT:  No Your Honor.  Nothing from us.

4          THE COURT:  All right.  Thank you very much.  We're

5    adjourned.

6          MR. VANUNU:  Thank you, Your Honor.

7          MR. KRAVET:  Thank you, Your Honor.

8          MR. HEWITT:  Thank you, Your Honor.

9      (Proceedings adjourned at 11:59 a.m.)

10

11                 TRANSCRIBER'S CERTIFICATE

12          I certify that the foregoing is a correct

13   transcript from the electronic sound recording of the

14   proceedings in the above-entitled matter.

15

16   *Sarah Saylor*                      May 15, 2025

17

18   _____    _____

19   Sarah Saylor                         DATE

20   Legal Transcriber

21

22

23

24

25